UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOREXPO LLC and KENDAL FLORAL SUPPLY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Defendant. | Case No.: 20-CV-1024 JLS (DEB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 5) |

Presently before the Court is Defendant Travelers Property Casualty Company of America's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("MTD," ECF No. 5). Plaintiffs filed an Opposition to the Motion ("Opp'n," ECF No. 15), and Defendant filed a Reply in support of its Motion ("Reply," ECF No. 19). The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See generally* ECF No. 17. Having carefully reviewed Plaintiffs' Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the relevant law, the Court **GRANTS** Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiffs FlorExpo, LLC ("FlorExpo") and Kendal Floral Supply, LLC (collectively, "Plaintiffs") are leading importers and distributors of fresh-cut flowers from

South America. *See* Compl. ¶ 7. FlorExpo purchased commercial property insurance from Defendant Traveler's Property Casualty Company of America ("Defendant") with "the Deluxe Property Coverage" for itself and its subsidiary, Plaintiff Kendal Floral Supply, LLC, for the 2020 to 2021 year (the "Policy"). *Id.* ¶ 11. The Policy provided coverage for loss or damages to "stock," including Plaintiffs' cut flowers, kept at various storage locations. *Id.* ¶¶ 12, 14. Plaintiffs allege that between March 16 and March 22, 2020, government authorities prevented Plaintiffs from entering two of their warehouses containing their flower stock, and the inability to access the warehouses led to a total loss of the stock at these locations. *See id.* ¶¶ 16, 19. On or about April 21, 2020, Plaintiffs tendered the loss and damage claim to Defendant for loss of the stock (the "Coverage Claim"), and on April 30, 2020, Defendant denied Plaintiffs' claim. *See id.* ¶¶ 22–23.

Plaintiffs filed suit for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. *See generally* Compl. Plaintiffs bring these claims against Defendant based on the following allegations: (1) Defendant breached its obligations under the Policy when it failed to confirm and pay the Coverage Claim; (2) Defendant breached its duty to act fairly and in good faith by failing to investigate properly the Coverage Claim; and (3) Plaintiffs are entitled to declaratory relief and seek a declaration as to the existence and extent of coverage for the Coverage Claim. *See id.* ¶¶ 32, 36, 39, 41. On August 20, 2020, Defendant filed this Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 5.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendant moves to dismiss Plaintiffs' breach of contract and declaratory relief claims for failure to state a claim on the following grounds: (1) the alleged loss of flower

stock falls within the Policy's acts or decisions "of any . . . governmental body" exclusion (the "Acts of Decisions Exclusion"); and (2) Plaintiffs fail to plead a plausible alternative for coverage for that loss under the Policy. *See* MTD at 13. Defendant further moves to dismiss Plaintiffs' breach of the implied covenant of good faith and fair dealing claim based on Plaintiffs' inability to plead a loss covered by the Policy. *Id.* at 17. In response, Plaintiffs firstly argue that the Policy exclusion relied upon by Defendant is limited to acts or decisions that were "the sole or direct cause" of the physical damages. Opp'n at 5. Plaintiffs secondly argue that, even if the government orders were the direct cause of the loss, Defendant relies on an improperly broad interpretation of the Acts or Decisions Exclusion. *Id.* at 9.

## I. Breach of Contract

### A. *California Insurance Law*

"While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *N. Am. Building Maint., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. Rptr. 3d 468, 479 (Cal. Ct. App. 2006). A court must interpret a contract "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. For written contracts, "the intention of the parties is to be ascertained from the writing alone, if possible." *Id.* § 1639; *see also Haynes v. Farmers Ins. Exch.*, 89 P.3d 381, 385 (Cal. 2004) (applying § 1639 to an insurance contract). The contract's language, therefore, determines the contract's interpretation "if the language is clear and explicit." Cal. Civ. Code § 1638; *see also Bank of the W. v. Superior Court*, 833 P.2d 545, 551 (Cal. 1992); *Blackhawk Corp. v. Gotham Ins. Co.*, 63 Cal. Rptr. 2d 413, 418 (Cal. Ct. App. 1997) ("[W]here the language of a contract is clear, we ascertain intent from the plain meaning of its terms and go no further."). The contract's words "are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Cal. Civ. Code § 1644; *see also MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003).

In addition to these general policy interpretation principles, "[p]articular rules apply to the interpretation of insurance policy exclusions." *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at 479. "[A]n exclusion limits or takes back some of the insurance coverage granted by the insuring clause." *Essex Ins. Co. v. City of Bakersfield*, 65 Cal. Rptr. 3d 1, 10 (Cal. Ct. App. 2007). "Therefore, 'exclusions serve to limit coverage granted by an insuring clause and thus apply only to hazards *covered* by the insuring clause.'" *Id.* (quoting *Old Republic Ins. Co. v. Superior Court*, 77 Cal. Rptr. 2d 642, 652 (Cal. Ct. App. 1998)) (emphasis in original). "[E]xclusionary clauses are strictly construed against the insurer and in favor of the insured." *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at 479 (citation omitted). Accordingly, "although the insured has the burden of proving the contract of insurance and its terms, the insurer bears the burden of bringing itself within a policy's exclusionary clauses." *Id.* (citation omitted).

In deciding an insurance coverage dispute, "[t]he determination whether the insurer owes a duty to defend is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993)). "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Id.* at 1161 (emphasis in original). "An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 123 Cal. Rptr. 2d 256, 272 (2002) (emphasis in original).

### B. The Insurance Policy

The root of the Parties' dispute is whether the Policy covers Plaintiffs' loss alleged in the Coverage Claim. The relevant parts of the Policy are reproduced here:

> A. COVERAGE
>> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
>
> \*\*\*
>> 2. Extra Expense

> Extra Expense means reasonable and necessary expenses described in a., b. and c. below that you incur during the "period of restoration" that would have not incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Clause of Loss.
>
> \*\*\*
>
> B. COVERED CAUSES OF LOSS
>  Covered Causes of Loss mean RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>  1. Excluded in Section C., Exclusions
>  2. Limited in Section D., Limitations
>  3. Excluded or limited in the Declarations or by endorsement
>
> C. EXCLUSIONS
>
> \*\*\*
>
> 3. We will not pay for any loss or damage caused by or resulting from any of the following, 3.a. through 3.c., but if an excluded cause of loss that is listed in 3.a. and 3.b. below results in a Covered Cause of Loss, we will pay for the loss or damage caused by the Covered Cause of Loss.
>
> \*\*\*
>
> b. Acts or decisions, including failure to act or decide, of any person, group, organization or governmental body except as provided in the Additional Coverage – Ordinance or Law Coverage.

Compl. Ex. A at 24, 41, 48, 62,[1] ECF No. 1-2.[2]

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

[2] As a general rule, a district court cannot rely on evidence outside the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.1999)). As the Policy was attached as an exhibit to the Complaint and both parties relied to a significant extent on the Policy in their briefing on the Motion, the Court will consider the Policy in ruling on the present Motion.

### C.     The Parties' Arguments

There are three main claims for coverage under this portion of the Policy. First, the Policy provides coverage for physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss. A Covered Cause of Loss is defined under the Policy as risk of "direct physical loss" unless otherwise excluded ("Covered Loss"). Ex. A at 41. The exclusion at issue is the Acts or Decisions Exclusion, specifically by a governmental body. Second, under the "Extra Expenses" provision, the Policy provides coverage for expenses incurred during the "period of restoration" resulting from the Covered Loss. *Id.* at 62. Third, if an excluded cause of loss ("Excluded Loss") results in a Covered Loss, the Policy provides coverage. *Id.* at 41. Plaintiffs contend that the Policy covers the loss of their flower stock for all of these reasons.

First, Plaintiffs argue that the damage to their flower stock resulted from a "Covered Loss," thereby triggering coverage under the "direct physical loss" provision. Compl. ¶ 21. Additionally, Plaintiffs seek coverage under the "Extra Expenses" provision for related costs of disposal of the flower stock and other mitigation efforts. *Id.* In response, Defendant asserts that the cause of loss to the flower stock was not a Covered Loss, but a loss attributable to governmental action and thereby an Excluded Loss based on the Acts or Decisions Exclusion. *See* MTD at 10–11. Plaintiffs argue that, in order for the Acts or Decisions Exclusion to apply, Defendant would need to prove the loss is "limited to the government directly ordering or undertaking the destruction of the stock" or that "all actual possible direct causes of the physical damage to the stock are excluded." Opp'n at 6.

Second, Plaintiffs argue that even if the government action was an Excluded Loss, it still resulted in a Covered Loss, thereby triggering coverage under Section C(3) of the Policy. Because both of Plaintiffs' claims for coverage are dependent upon the loss or damage being caused by a Covered Loss under the Policy, the determination rests on whether the losses alleged by Plaintiffs are Covered Losses.

///

///

### D. Analysis

Here, Plaintiffs must first demonstrate that the underlying claim potentially falls within the scope of the insurance coverage. *Horace Mann Ins. Co.*, 846 P.2d at 795. Plaintiffs argue that "under the 'all perils' Policy form, all causes of loss are covered unless specifically excluded." Opp'n at 6 (emphasis omitted). Plaintiffs allege that the "direct physical loss" of the flower stock resulted from a Covered Loss, specifically that the stock "could not be maintained and distributed," "had all perished," and "was disposed," triggering coverage under the Policy. Opp'n at 6–7. The Court finds these causes could potentially fall under the Covered Loss of the Policy.

But it is not determinative that the underlying action falls within the scope of coverage. An exclusion may still apply that limits or excludes coverage under the policy. In order to rely on an exclusion to deny that coverage, Defendant must provide conclusive evidence that the exclusion applies, *Atl. Mut. Ins. Co.*, 123 Cal. Rptr. 2d at 272, and the Court will strictly construe the exclusionary clause in favor of Plaintiffs, *N. Am. Building Maint.*, 40 Cal. Rptr. 3d at 479. Here, Defendant relies on the Acts or Decisions Exclusion to argue that Plaintiffs' loss was instead caused by an "excluded risk, which by definition, is not a Covered Cause of Loss." MTD at 11. More specifically, Defendant argues that that loss of stock "falls squarely within the Policy's acts or decisions 'of any . . . governmental body' exclusion." *Id.* at 13.

Defendant contends that the Acts or Decisions Exclusion "bars coverage for property damage, loss, and expense that is caused by or results from any decision, act or failure to act or decide, by an insured or any third party—including, specifically, any 'governmental body.'" *Id.* at 16. Plaintiffs state that they were unable to access their flower stock due to government authorities' involvement. *See* Compl. ¶ 16. Due to Plaintiffs' inability to access their stock, Plaintiffs' flowers perished, resulting in the loss they seek relief for under the Policy. *Id.* ¶ 19. According to Defendant, that government action is an Excluded Loss under the Acts or Decisions Exclusion that caused the loss of Plaintiffs' flower stock. *See* MTD at 17. Defendant argues that this brings the claim under the Acts or Decisions

Exclusion, and that because Plaintiffs established no other Covered Loss for the loss of stock, the Policy affords no coverage. *Id.* If correct, this failure to establish a Covered Loss would make Plaintiffs' Coverage Claim properly excluded by Defendant.

Plaintiffs contend that, in order for the Acts or Decisions Exclusion to apply, the act or decision must be the "sole and direct" cause of the physical damage. *See* Opp'n at 5. A policy exclusion for coverage may apply when the cause of loss was not a "separate and independent" act from the excluded loss. *Jernigan v. Nationwide Mut. Ins. Co.*, No. C 04-5327 PJH, 2006 WL 463521, at *11 (N.D. Cal. Feb. 27, 2006). Plaintiffs rely on *Boardwalk Condominium Ass'n v. Travelers Indemnity Co. of Illinois*, Case No. 03-cv-505, 2007 WL 1989656 (S.D. Cal., July 3, 2007), to support their argument. In *Boardwalk*, inadequate ventilation systems caused excessive condensation of moisture in the roof and wall cavities of a structure, resulting in mold and water damages. *Id.* at *9. Per the defendant's policy, lack of ventilation constituted an excluded loss, while condensation constituted a covered loss. *Id.* The policy contained a similar clause that provided coverage if an excluded loss resulted in a covered loss. *Id.* at *8. This Court determined that the condensation was "separate and independent" from the lack of ventilation, and thus a separate, excluded loss—the lack of ventilation—resulted in a covered loss—the condensation—which then caused the damage. *Id.* at *9. The Court rejected the defendant's motion for summary judgment in part because the defendant failed to show that the damage "was caused solely by the lack of ventilation," and thus failed to show the plaintiff's claim could not fall under the policy coverage. *Id.*; *see Montrose Chem. Corp.*, 861 P.2d at 1161.

*Boardwalk* is distinguishable from this case for two reasons. First, the causal chain of events in *Boardwalk* has an additional cause nonexistent in the present matter. In *Boardwalk*, the Court found the lack of ventilation was an excluded loss, which resulted in the condensation, a covered loss. Only then did the covered loss cause the mold and water damage. The identified covered loss of condensation was both separate from the excluded loss and also distinguishable from the loss itself, that is the mold and water damage. In

20-CV-1024 JLS (DEB)

this case, Plaintiffs argue that the "*actual direct* causes of the stock loss" are that the stock could "not be maintained," "perished," and "was disposed" of.  Opp'n at 6–7 (emphasis in original).  These causes are not separate, Covered Losses but are in fact the loss itself.

Second, the government action of restricting access to Plaintiffs' warehouses was not "separate and independent" from the loss of the stock, as no intervening cause, such as the condensation in *Boardwalk*, exists.  In *Boardwalk*, the plaintiff provided a number of alternative covered causes of loss, including "roof leaks, window leaks and leaks around the fireplaces."  2007 WL 1989656, at *9.  Here, Plaintiffs have not pled a plausible alternative to the government action that caused their loss of stock.  The stock perishing and being disposed of is not a "new hazard or phenomenon, separate and independent" from the government action to restrict access.  *Id.* at *2.  As stated in the Complaint, Plaintiffs were "prevented by government authorities from accessing the [warehouses]" and, upon re-obtaining access, "there had been a total loss of the remaining stock."  Comp. ¶¶ 16, 19.  Plaintiffs identify no other independent, Covered Losses that resulted in the loss to the flower stock.  Thus, the Court is not persuaded by Plaintiffs' argument that the government action was not the sole and direct cause of the loss.

Alternatively, Plaintiffs argue that, even if the government action was the direct cause of loss, the Acts or Decisions Exclusion should be read to include only negligent or improper acts or decisions, because the "idea is to exclude improper acts and decisions, *e.g.*, the type of actions and decisions that properly put the responsibility for loss on the negligence of the policy holder or a third-party (instead of the insurer)."  Opp'n at 9–10.  Plaintiffs go on to argue that "at a minimum, the exclusion is ambiguous."  *Id.* at 13.  Because an ambiguous exclusion clause in an insurance contract is less likely to be enforceable, the Court will first address Plaintiffs' ambiguity argument.

"To be enforceable, a coverage exclusion must be 'conspicuous, plain and clear.'"  *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204, (2004); *see also Ausmus v. Lexington Ins. Co.*, 414 F. App'x 76 (9th Cir. 2011) (affirming district court's grant of motion to dismiss because applicable exclusion was conspicuous and clear).  An insurance

contract is "ambiguous if the court finds that the language is subject to different interpretations." *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989). Here, the Acts or Decisions Exclusion is plainly stated and free of jargon. Additionally, the Acts or Decisions Exclusion is similar to standard insurance policy exclusions multiple courts have previously analyzed and found unambiguous. *See Tzung*, 873 F.2d at 1341 (holding that a similar policy exclusion "unambiguously" excludes the loss in the claim); *Cuevas v. Allstate Ins. Co.*, 872 F. Supp. 737, 739 (S.D. Cal. 1994) (finding an exclusion for "[c]onduct, act, failure to act, or decision of any person, group, organization or governmental body" unambiguous); *Stephens v. Liberty Mut.*, No. C 05-0213 PJH, 2008 WL 480287, at *14 (N.D. Cal. Feb. 19, 2008) ("Courts have previously found [acts or decisions] policy language to be unambiguous in situations involving third-party negligence."); *Landmark Hospitality, LLC v. Continental Cas., Co.*, 2002 WL 34404929, at * 2 (C.D. Cal. July 2, 2002) (finding the policy's exclusion for "acts or decision, including the failure to act or decide, or any person, group, organization or governmental body" unambiguous). *But see Mettler v. Safeco Ins. Co. of Am.*, Case No. 12-cv-5163, 2013 WL 231111, at *6 (W.D. Wash. Jan. 22, 2013) (finding a similar acts or decisions clause ambiguous based on the term "any"). The Court joins the majority of courts analyzing similar clauses and finds that the language of this exclusion is unambiguous, and thus the Court will interpret the exclusion based on its plain language.

Under the plain language of the Acts or Decisions Exclusion, the Court finds Plaintiffs' reading of a negligence requirement inapplicable and unnecessarily restrictive. Defendant argues the Court should find the clause covers "loss or damage caused by both the intentional acts and careless omissions of third parties." MTD at 15 (citations omitted). The Court agrees. To read a negligence or intent requirement into the Acts or Decisions Exclusion would go beyond the plain language of the Policy. The Exclusion states that losses are excluded when caused by "acts or decisions . . . of any person, group, or organization or governmental body," yet Plaintiffs assert that the Policy should be limited to include only "improper" or negligent acts. Opp'n at 9. However, none of the cases that

Plaintiffs rely on to make this argument read a negligence requirement into an insurance policy's acts or decisions exclusion. *See Stephens v. Liberty Mut.*, No. C 05-0213 PJH, 2008 WL 480287, at *20 (N.D. Cal. Feb. 19, 2008) (finding that the "exclusion barring coverage for 'acts or decisions' of 'any person [or] group' logically includes 'acts or decisions' of third parties" (alterations in original)); *Jernigan v. Nationwide Mut. Ins. Co.*, No. C 04-5327 PJH, 2006 WL 463521, at *11 (N.D. Cal. Feb. 27, 2006) (noting that an "intentional act by a person" would fall under such an exclusion, but nowhere requiring negligence). While courts have applied similar acts or decisions exclusions to instances where a third party acted negligently, this is not the same as limiting the exclusion to negligent acts. *See, e.g.*, *Duarte & Witting, Inc. v. Universal Underwriters Ins. Co.*, No. C-05-1315 MHP, 2006 WL 2130743, at *11 (N.D. Cal. July 27, 2006) (determining third party's negligent acts may have "cause[d] some of the damage" in a multi-causation analysis, but nowhere limiting exclusion clause with similar language to only negligent acts). Thus, the plain language of the Acts or Decisions Exclusion, as well as the common interpretation of such exclusions, does not limit the exclusion to instances of negligence.

Further, this interpretation is of particular importance with respect to the acts or decisions of a governmental body. Plaintiffs contend that the "purpose" of the exclusion is to limit coverage to improper or negligent conduct by the government, and that they "do not allege that the government preventing access to the warehouses was a negligent or improper act or decision." Opp'n at 9. Under Plaintiffs' interpretation, the only government acts that fall under the exclusion would be when the government acts negligently in its mandate or orders the mandate with the intention of causing the specific loss. This would remove a vast majority of government actions from the Policy's exclusion. There is nothing in the Policy's Acts or Decisions Exclusion language demonstrating intent to limit its application to such narrow circumstances, or to necessitate an assessment of the government actor's state of mind. Plaintiffs also provide no evidence that the Parties' intended such a purpose in the Policy. Plaintiffs' interpretation would require the Court to rewrite the insurance policy to require "negligence" or "intentional"

government acts, which the Court will not do. *See Rosen v. State Farm Gen. Ins.*, 30 Cal. 4th 1070, 1072 (2003) ("[W]e do not rewrite any provision of any contract, for any purpose."). Because no such language or evidence of intended purpose exists, the Court will not read a negligence requirement into the Acts or Decisions Exclusion.

Thus, while Plaintiffs successfully have shown there may be a potential claim for coverage under the Policy, the Court finds that the Acts or Decisions Exclusion applies to exclude Plaintiffs' claim for two reasons. First, the governmental action was the direct cause of the loss for which Plaintiffs seek relief in the Coverage Claim, bringing the claim within the Acts or Decisions Exclusion. Second, the Court refuses to read a negligence limitation into the Exclusion, where such language does not exist and where courts interpreting similar exclusions have not limited the clause to only negligent acts. Defendant has conclusively demonstrated the Exclusion applies. *See Atl. Mut. Ins. Co.*, 123 Cal. Rptr. 2d at 272. Defendant's rejection of the Coverage Claim was justified based on the Acts or Decisions Exclusion, and Plaintiffs fail to state an alternative claim for coverage under the Policy. Therefore, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiffs' claim for breach of contract.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing

"In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). A court can conclude as a matter of law that "an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. An insurer is liable for breach of the implied coverage of good faith and fair dealing if it acted unreasonably in denying coverage." *Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citations omitted).

///

///

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing relies on Defendant's failure to properly investigate Plaintiffs' Coverage Claim for their loss. Compl. ¶¶ 41–42. Given that Defendant based its denial of coverage under the Policy on the Acts or Decisions Exclusion discussed above, *see supra* Section I, the Court finds no breach of the implied covenant of good faith and fair dealing. Defendant's denial of coverage was justified under a valid exclusion. Further, Plaintiffs do not plead sufficient facts to suggest Defendant's actions in denying coverage were "willful or malicious." Compl. ¶¶ 41–42. Because the Court finds Defendant's actions in denying coverage based on the exclusion were in accord with the Court's interpretation of the Policy, Plaintiffs failed to show that Defendant's reason for withholding benefits under the policy was unreasonable or without proper cause. As such, the Court **GRANTS** Defendant's Motion to Dismiss the Plaintiffs' claim for breach of the covenant of good faith and fair dealing.

### III. Declaratory Judgment

Plaintiffs' final claim is for declaratory relief, asserting that it "is necessary and appropriate" to determine the rights and obligations under the Policy and to declare the existence and extent of coverage for the Coverage Claim. Compl. ¶ 32. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985); *see also Newcal Indust., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1056–57 (9th Cir. 2008). Plaintiffs are not entitled to declaratory relief because, as noted *supra* in Sections I–II, the Policy exclusion applies and does not cover their loss. Thus, there is no useful purpose that would be served in granting relief. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss the Plaintiffs' claim for declaratory relief.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss as to all of Plaintiffs' asserted claims. Accordingly, the Court **DISMISSES WITHOUT**

///

**PREJUDICE** Plaintiffs' Complaint. Plaintiffs may file an amended complaint within thirty (30) days of the date on which this Order is electronically docketed.

     **IT IS SO ORDERED.**

Dated: March 8, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge